UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           v.

DUSTIN POST,

           Defendant.

_____

           **20-CR-30-LJV-MJR**

           **REPLY IN SUPPORT OF OBJECTIONS**

      The government first argues that this Court should reject Mr. Post's "purported" objections because "aside from several isolated contentions, defendant does not address Judge Roemer's reasoning or analysis." (Gov. Resp., at 2.) That's not correct – the "contentions" are not isolated and they are many. But even if they were not, this would not be a basis to reject the objections, which are very real. The standard of review is not 'presumed-to-be-correct-unless-proven-otherwise,' as the government implies. The standard of review is *de novo,* and therefore it is entirely appropriate, indeed it is arguably mandatory, to make the same arguments as were made before the magistrate judge. To reject those arguments now simply because they were made previously would be a misapplication of the standard of review.

**A.**    **The Youthful Offender adjudication, if it exists, should not be considered a prior conviction**.

      Mr. Post has previously addressed the issue regarding which law – state or federal – should control and will not rehash that argument here.

      Moving to whether an individualized or categorical analysis is required, the government cannot rebut the clear language from *Salvatore* that there are "substantial arguments" favoring

an individual analysis. *United States v. Salvatore*, 568 Fed. Appx. 76 (2d Cir. 2014). The R&R's characterization of this as "expressing doubt that an individualized analysis was necessary," is clearly erroneous and the government makes no real attempt to defend it.

Applying the individual analysis, it must again be emphasized that Mr. Post's alleged prior conviction is a world apart from the defendant's conviction in *Salvatore*. Like the R&R, the government glosses over this important distinction; instead attempting to inflate the seriousness of the offense by noting that Mr. Post could have "faced up to one year." By comparison, the defendant in *Salvatore* faced **25 years** in prison.

Next, the government argues that, despite its absence from among several factors identified by the Second Circuit, consideration of Mr. Post's probationary status – which has not even been confirmed as accurate – is appropriate because the purpose of enhanced penalties is to punish and deter recidivism. But this proves too much. If courts were simply to hang their hats on the notion that enhanced penalties are meant to "punish and deter recidivism" then all priors would count. But plainly not all of them do. This is evidenced by the mere fact that the Second Circuit has identified factors that ought to be considered in making a determination whether a prior conviction should qualify for an enhanced sentence. And there are obvious reasons why an alleged misdemeanor act committed by a 17-year-old on school bus that today would be handled in family court (another fact not addressed at all by the government) should not add a *mandatory* 10 years to a subsequent conviction, completely stripping this Court of any discretion in sentencing.

Finally, the government asserts in a footnote that citations *to United States v. Driskell, 277 F.3d 150 (2d Cir. 2002), United States v. Conca, 635 F.3d 55 (2d Cir. 2011), and United*

*States v. Jones*, 415 F.3d 256 (2d Cir. 2005) "are inapposite" because they involve the guidelines not §§ 2251 and 2252. (Gov. Resp., at 7., n. 2).

These cases are relevant and instructive because there is no authority within the Second Circuit that addresses the question whether a Y.O., much less a Y.O. arising from a misdemeanor charge, ought to automatically lead to a 10-year sentence enchantment under §§ 2251 and 2252. Thus, reference to other similar areas of law, just as the government has done with *Sampson*, is not only entirely appropriate but necessary.

**B.     Under the categorical approach, Mr. Post's Y.O. adjudication is not a qualifying predicate.**

The government has not met its burden to demonstrate that Mr. Post has a qualifying predicate conviction.

In response, the government appears to suggest that a portion of this argument is untimely. (Gov. Resp., at 9) ("For the first time in his objections to the R&R, defendant urges that the Information was insufficient, absent more, to establish his prior conviction.")  This is a bold notion consideration that the defense was not even provided the Information until after the motions deadline had passed and that no oral argument was even held on the motion. Equally bold, the government claims that it complied with its discovery obligation by providing the "FBI rap sheet." It tellingly fails to note however, that this rap sheet listed **zero** prior convictions – a fact that led, in part, to the filing of the motion to dismiss in the first place. (*See* Ex. A). So, the only document that the government timely provided was one that contradicted the confidential bail report, which itself is intended only as a guide to making bail determinations, not a substitute for the government's Rule 16 discovery obligations.

In *United States v. Overton*, No. 15-CR-9S, 2017 WL 664165, at *1 (W.D.N.Y. Feb. 16, 2017), relied on by the government for the proposition that the government can simply refer a defendant to a document produced by probation, Magistrate Judge Scott found disclosures sufficient where the "Government has produced records of Overton's prior criminal history *and* cites to the pretrial services report that Overton received early in the case from the United States Probation Office." *Id.* (Emphasis added). Judge Scott, in other words, does not find that the pretrial report alone is sufficient.

Given the FBI report, it's still not clear whether Mr. Post has a prior conviction/adjudication or not.

Indeed, the government does not attempt to explain how a certificate of conviction dated May 2020 was suddenly created only after doubts were raised about whether a conviction occurred at all. Instead, the government characterizes this as a factual dispute that invades "the inviolable function of the jury." (Gov. Resp., at 10).

But again this argument betrays a misapprehension of *Apprendi*. Whether Mr. Post has a qualifying prior conviction is not a matter that is decided by the factfinder. It is decided by this Court. Right or wrong, that remains settled, black letter law. *See, e.g., United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001) ("In short, we read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the "who, what, when, and where" of a prior conviction.").

To be sure, this Court could defer ruling on the matter until sentencing if Mr. Post were convicted on the underlying charge, but the government has inappropriately chosen to include it

in the indictment. At the very least then, this Court must strike that language from the indictment, precisely as occurred in *United States v. Salvatore*, 11-CR-359 (WDNY), Docket Nos. 39, 45. And, aside from mistakenly deeming it a question for the factfinder, the government offers no argument in opposition to this.

It appears that this fundamental misunderstanding of *Apprendi* is what led the government to overreach in the first place and include the fact of the prior conviction in its presentation to the grand jury, which in turn led to this protracted motion practice. All of it could have been avoided. Even now the government continues to beat this drum, but it remains out of time.

**C.    The Grand Jury was tainted.**

Last, the government hints (but won't say) that it did not rely on a confidential bail report to secure the indictment alleging a qualifying prior conviction, but instead may have relied exclusively on Mr. Post's comments about his own criminal history. If this is what occurred, it raises more questions than answers. An off-the-cuff recollection of a possible conviction from a young man without any legal training, without any detail, is sufficient to return a federal indictment against a that person imprisoning him for an extra 10 years? Was the grand jury informed that it was a youthful offender adjudication? Was that process explained to the grand jury? Was the grand jury told that there exists no certificate of conviction for this allegation? Was that process explained to the grand jury? All these questions highlight why this sort of question is not a determination within the grand jury's bailiwick. It is a purely legal determination – one made by this Court. The topic should have never arose, and by unnecessarily inserting it, the government tainted the whole proceeding.

Accordingly, this Court should grant the motion to dismiss. In the alternative, it should strike the prior-conviction language from the indictment and conclude: (1) the government has not met its burden proving that a prior conviction exists at all, and, if it does exist, (2) the prior adjudication cannot serve as predicate for an increased mandatory minimum. At a minimum, this Court should hold those questions in abeyance if and until Mr. Post is sentenced.

**DATED:** June 26, 2020, Buffalo, New York.

Respectfully submitted,

**/s/Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341; 551-3346 (fax)
jeffrey_bagley@fd.org
*Attorney for Defendant Dustin Post*

**TO:**  David Rudroff
    Assistant United States Attorney