IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.                                                       20-CR-30-LJV

DUSTIN J. POST,

                        Defendant.

## GOVERNMENT MEMORANDUM IN SUPPORT OF A GUIDELINE SENTENCE

From the age of 15 until his arrest at 24, the defendant led a life characterized almost exclusively by predatory sexual behavior. He perpetrated a reign of terror in Chautauqua County, leaving nine children and one adult woman in his wake and an entire community reeling. Due only to the courage of his victims—who came forward to report their abuse—and the prompt response of law enforcement, the defendant's spree has come to an end. He now comes before this Court to be sentenced for his conduct—to finally be held accountable for his actions—and this Court should send a clear and powerful message: our children are the most innocent and vulnerable among us, and those who prey on them for their own sexual gratification will be punished severely. The Court should impose a guideline sentence of 1,920 months.

## ARGUMENT

Since *United States v. Booker*, 543 U.S. 220 (2005) the sentencing guidelines are advisory rather than mandatory. However, when imposing a sentence, the Court is required to

consider the guidelines when fashioning a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a).  As noted by the Supreme Court, the guidelines have a "real and pervasive effect … on sentencing" and therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar."  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).  The United States contends that a sentence of 1,920 months, which is the advisory guideline range,[1] is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.  *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress …. It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider.").  The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must

---

[1] The defendant contends that this number is arbitrary, "as if 1,919 months would be too few . . . but 1,921 would be too much." Dkt. 67 at 4.  It should be noted that the Guidelines would otherwise call for a *life sentence*, but, because a life sentence is not available under the statutes of conviction, the statutory maximum of 1,920 months is substituted.  It is therefore not arbitrary at all, but a statutory restriction where the United States Congress and U.S. Sentencing Commission have determined that the defendant's crime warrants a life sentence.

2

state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

Based on the § 3553(a) factors, as set forth below, the government respectfully submits that a guideline sentence of imprisonment is warranted.

**A.    The nature and circumstances of the offense warrant a severe sentence.**

As set forth in the Revised Presentence Investigation Report ("PSR") (Dkt. 69), the defendant used threats, grooming, and deception to produce child pornography[2] depicting himself forcibly abusing a 12-year-old girl ("MV1") on two occasions. Specifically, according to the defendant, while the defendant and his wife were babysitting MV1 and her siblings he concocted a ruse in which he told MV1 that his young son had been kidnapped, and that the only way to get him back was to send a video of her "doing something naughty." PSR ¶ 37. His goal was to record himself sexually abusing MV1. He flippantly described his ruse to investigators as "how [he] set it up to get [his] experience." *Id.*

MV1 told a far more disturbing story. According to MV1 the defendant previously attempted to photograph her nude or in her underwear after he came into her bedroom uninvited. *Id.* ¶ 46. He propositioned her for sex by telling her—a 12-year-old girl—that he and his wife had "an open relationship." *Id.* Eventually, when those attempts failed, the defendant attempted the ruse described above. When MV1 refused to engage in sexual

---

[2] The term "child pornography" is a misnomer. These images are not pornography. They do not depict sex. These images are the memorialization of the gruesome sexual abuse of real children. For this reason, the FBI has recently begun using the term Child Sex Abuse Material to more accurately reflect the material at issue.

3

conduct with the defendant, he threatened her siblings with physical harm. *Id.* ¶ 48. The defendant's grooming behavior leading up to the physical abuse, and his attempts to minimize his conduct when confronted by law enforcement are both troubling; they portray a deceptive and manipulative nature that makes the defendant even more dangerous.

Whether preceded by lies or outright threats, however, the videos that the defendant recorded are deeply disturbing. The defendant first forced MV1 to identify herself by name and age. He then, over the course of two videos totaling over two minutes, forcibly thrust his penis in her mouth, holding her head in place with his hands as she struggled. MV1 shook, hyperventilated, and whimpered. She pleaded with him to stop. At times, she tried to pull away or stop him with her hands. None of it was enough to make the defendant stop—not before he got "his experience."[3] The defendant saved these videos to an encrypted thumb drive. Further illustrating the defendant's depravity, the encryption password for the thumb drive translates to "Kiddyfucked2019." PSR ¶ 22.

An ordinary case of child sexual abuse or possession of child pornography is abhorrent. But the defendant's conduct here goes beyond even that. The defendant's selfish desire for his "experience," his deceptive and threatening means to achieve it, his sadistic need to physically force MV1's compliance, and his seeming gratification in the cruelty of it all, warrant an extremely severe sentence that is commensurate with his behavior.

---

[3] A full description of the videos at issue may be found in the Government's opposition to the defendant's objection to sentencing factors. Dkt. 73. Copies will also be provided to chambers under seal for *in camera* review as part of that motion practice.

4

**B.     The history and characteristics of the defendant warrant a severe sentence.**

In addition to the nature of the defendant's crimes, this Court should look to the history and characteristics of the defendant when fashioning an appropriate sentence. 18 U.S.C. § 3553(a)(1). Viewing the defendant's behavior in its entirety is consistent with the "longstanding principle" that it is "'[h]ighly relevant—if not essential" for a sentencing judge to have "the fullest information possible concerning the defendant's life and characteristics.'" *United States v. Watts*, 519 U.S. 148, 151-52 (1997) (per curiam) (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). This, has long been understood to include "past criminal behavior which did not result in a conviction." *BMW of North Am. v. Gore*, 517 U.S. 559, 573 n. 19 (citing *Williams*, *supra*). As noted above, 18 U.S.C. § 3661 "codifies th[is] longstanding principle." *Watts*, 519 sU.S. at 151; s*ee also Pepper v. United States*, 562 U.S. 476, 489 (2011) (noting that in § 3661 and Guideline § 1B1.4, "[b]oth Congress and the Sentencing Commission . . . expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited . . . as to the kind of information they may consider'") (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)) (brackets omitted).

Doing so here paints an even more disturbing portrait. The defendant's sexual abuse of MV1, underlying Counts 1 and 2 and discussed above, is disgusting enough, but, unfortunately, it is not an isolated incident. To the contrary, the PSR details years of sexual deviancy and abuse by the defendant, including sex with animals, enticement of minors via the internet, a collection of child pornography, and the hands-on sexual abuse of *at least* nine children between the ages of three months and 12 years.

5

The defendant appears to have started abusing children when he was 15 years old. By his own admission, he became sexually aroused while changing the diapers of two of his infant relatives. PSR ¶ 136-138. He admitted that he would penetrate the girls with his fingers while changing their diapers. PSR ¶ 137. When he was left alone with them, he would "get some lube and rub [him]self on them." PSR ¶ 137. He approximated that he had ejaculated on them 100 times. PSR ¶ 137.

The defendant's behavior continued over the years. When he was 17 years old, he forced a 12-year-old girl to perform oral sex on him on a school bus in front of his friends. PSR ¶ 144. The defendant minimized his conduct when speaking with investigators in this case, claiming he "blacked out." PSR ¶ 15. But according to investigative records from the Chautauqua County Sheriff's Office, the defendant clearly forced an unwilling child to perform sex acts on him in public, grabbing her arm to prevent her from leaving and using his hands to prevent her from pulling her head away (which is strikingly similar to the conduct with MV1). PSR ¶ 144.

Having sexually abused three children before the age of 18 would be bad enough, but the defendant did not stop there. He effectively kidnapped an 8-year-old girl whom he was supposed to be taking to a birthday party and sexually abused her at a residence in Fredonia. PSR ¶ 107. He blindfolded the young girl and told her that he was putting a sucker in her mouth so she could guess the flavor. PSR ¶ 107-108. Instead, he forced his penis in her mouth—a ruse he called "the sucker game." PSR ¶ 107-109.

The defendant also anally raped an 11-year-old female relative of his wife after soliciting her to send him child pornography (PSR ¶ 110-117), orally sodomized a three-year-old girl while her mother was recovering from a seizure (PSR ¶ 125-127), attempted to rape a 13-year-old girl at knifepoint (PSR ¶ 128-133), and bound four and six-year-old sisters with a cut-up lamp cord so he could play the sucker game, then drugged them with sleeping pills, anally raped one, and attempted to anally rape the other. PSR ¶ 118-124.

However, the defendant's sexual depravity is not limited to his personal abuse of children. The defendant also possessed a large collection of child pornography on three different electronic devices and on Dropbox. PSR ¶ 21-33. He communicated with minors on the internet and attempted to obtain nude photos of them. PSR ¶ 58-60. He forcibly, anally raped at least one adult woman, calmly remarking "I basically raped you anally" when he was done. PSR ¶ 151-152. He even had sex with his family's dogs on more than one occasion. PSR ¶ 153.

The history and characteristics of the defendant make it clear that the defendant is disposed to predatory sexual behavior, whether with children, other adults, or animals. The conduct for which he is to be sentenced here is consistent with his history and characteristics, as discussed in the PSR. This was not aberrant behavior or a momentary lapse in judgment. It is but one instance in a long history of predatory sexual offending. He appears completely unable to control himself, and that warrants a severe sentence.

**C.     The only way to deter the defendant, and others like him, is by imposing a severe sentence.**

Deterrence has always been a primary goal of sentencing, both specific deterrence and general deterrence. 18 U.S.C. §§ 3553(a)(2)(B) and 3553(a)(2)(C). The defendant appears to argue that a severe sentence is not necessary to deter him from future offending. Dkt. 67 at 9-11. Instead, he argues that the natural decline in recidivism rates as offenders age, and the deprivations of liberty that come with being a registered sex offender, are sufficient to ensure that the defendant will not reoffend. *Id.* The defendant also points to his supposed maturation while incarcerated and expressions of remorse as evidence of the same.

Notably, the defendant did not submit an individualized assessment from a mental health professional opining that *he*, specifically, will not reoffend. Instead, he relies on studies that discuss factors affecting recidivism generally. *Id.* The Court, however, should not look to such general studies, but should view the defendant's own conduct and his attitude regarding his past behavior as the best indication of his future behavior.

First, the defendant's own admissions establish that a severe sentence is necessary to deter future sexual abuse. In fact, during his interview, the investigators asked the defendant, "you can't control the urge, can you?" The defendant responded, "there's a lot of things I can't control." The investigator responded "and that's one of them," to which the defendant nodded in the affirmative. PSR ¶ 113. By his own admission, the defendant cannot stop himself from hurting children.

8

Second, the defendant's actions thus far establish that he cannot—or will not—stop. As described above, the defendant began sexually abusing children when he was only 15 years old. His behavior continued—and escalated—over the next nine years as he continued to abuse children, rape a woman, and amass a large child pornography collection. His behavior stopped only when he was arrested for the offenses here.

There is even less reason to believe that the defendant will be deterred by a minimal sentence because he was already arrested and charged after he abused the child on the school bus in 2014. PSR ¶ 144. The defendant was convicted of Sexual Misconduct, adjudicated a youthful offender, and ordered to serve six years of probation. PSR ¶ 144. In short, the defendant was already given the second chance he requests here, and he used it to sexually abuse eight additional children. In fact, as part of that sentence, the defendant underwent sex offender counseling to no avail. PSR ¶ 178. The defendant's conduct is the best indication of his recidivism risk. There is little reason to believe that he will stop if not incarcerated.

Lastly, the Court should consider the defendant's statements and attitude regarding his conduct when examining his likelihood to reoffend. At every turn, until his formal sentencing submission (Dkt. 67, Ex. A), the defendant has minimized his behavior or attempted to avoid responsibility altogether. When first encountered by investigators, he claimed to have "blacked out" when abusing one of the victims. PSR ¶ 15. When

discussing how he anal raped his wife's minor relative, he claimed that she "came onto" him. PSR ¶ 110.   When interviewed by the U.S. Probation Department after his plea, he brushed off his conduct with MV1, claiming it "just happened."   PSR ¶ 74.   He described his forcible sexual abuse of MV1 as "just oral."   PSR ¶ 74.

When the defendant does acknowledge his behavior, he regards it with, at best, flippancy.   For example, when discussing how he played "the sucker game" with one victim, he readily stated "She is probably gonna have to go through a shit ton of counseling (sic).   I probably ruined that girl's trust in other people forever."   PSR ¶ 108. When describing his attempt to rape a 13-year-old girl at knifepoint, he stated "I . . . was thinking like well maybe I can have some fun."   PSR ¶ 129.   When confronted about the effect his sexual abuse of MV1 might have on her, he stated that she seemed fine, but "I'm pretty sure I messed her up."   PSR ¶ 40.

To be sure, the defendant's expression of remorse in his sentencing memorandum is eloquent.   But the best evidence of the defendant's genuine beliefs lies in what he says when he is not standing before a federal Judge facing a substantial prison sentence.   The defendant has spoken clearly.   He doesn't think he did anything wrong, and, if he did, he doesn't appear to care.   A severe sentence is therefore necessary to deter the defendant and others like him.

## CONCLUSION

Only a guideline sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing. A guideline sentence reflects the disturbing nature of the offense, the defendant's history of unrepentant predatory sexual abuse, and the need to deter him from his previously unabated criminal conduct.

DATED: Buffalo, New York, January 28, 2022.

                                                TRINI E. ROSS
                                                United States Attorney

BY:   s/ DAVID J. RUDROFF
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5806
        David.Rudroff@usdoj.gov